```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE MIDDLE DISTRICT OF ALABAMA
 3                        NORTHERN DIVISION
 4
 5     UNITED STATES OF AMERICA
 6          vs.              CASE NO.: 2:06cr75-MHT
 7     WILLIE FRED GOLDSMITH,
 8              Defendant.
 9              * * * * * * * * * * * * * *
10            INITIAL APPEARANCE/REVOCATION HEARING
11              * * * * * * * * * * * * * *
12         BEFORE THE HONORABLE UNITED STATES MAGISTRATE JUDGE
13   CHARLES S. COODY at Montgomery, Alabama, on May 14, 2008,
14   commencing at 3:02 p.m.
15                          APPEARANCES
16   FOR THE GOVERNMENT:    Mr. J. B. Perrine
                            Assistant United States Attorney
17                          OFFICE OF THE UNITED STATES ATTORNEY
                            131 Clayton Street
18                          Montgomery, Alabama  36104
19   FOR THE DEFENDANT:     Mr. C. Pate Debardelaben
                            2835 Zelda Road
20                          Montgomery, Alabama  36104
21
22         Proceedings recorded by digital sound recording;
23         transcript produced by stenography and computer.
24
25
```

PATRICIA G. STARKIE, RDR, CRR, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, MIDDLE DISTRICT OF ALABAMA
ONE CHURCH STREET, MONTGOMERY, AL  36104   334-262-1221

```
 1            (The following proceedings were heard before the
 2  Honorable United States Magistrate Judge Charles S. Coody at
 3  Montgomery, Alabama, on May 14, 2008, commencing at 3:02 p.m.)
 4            THE COURT:  ...States versus Goldsmith, 2006 criminal
 5  75, for the purpose of an initial appearance on a revocation
 6  petition, but I understand, Mr. Debardelaben, that you are --
 7            MR. DEBARDELABEN:  We are.
 8            THE COURT:  -- desirous of going forward with the
 9  preliminary hearing on the matter?
10            MR. DEBARDELABEN:  If you have time, Your Honor.
11            THE COURT:  Is the government ready to proceed on the
12  preliminary hearing?
13            MR. PERRINE:  We are, Your Honor.
14            THE COURT:  I do have time.  We will do that.
15            But first, Mr. Goldsmith, if you will please stand.
16  Mr. Goldsmith, you have the right to remain silent during this
17  and all proceedings in this court.  If you give up that right,
18  any statements that you make concerning the allegations against
19  you in the petition requesting revocation of your supervised
20  release can and will be used against you.  Do you understand
21  that?
22            THE DEFENDANT:  Yes, sir.
23            THE COURT:  You also have the right to be represented
24  by a lawyer during all proceedings in this court.  If unable to
25  afford a lawyer, the Court will appoint and pay a lawyer for
```

1  you.  Do you understand your right to counsel?
2          THE DEFENDANT:  I do.
3          THE COURT:  And Mr. Debardelaben has already been
4  appointed to represent you in this matter.
5          Mr. Goldsmith, first, a petition was filed requesting
6  the Court to revoke your supervised release for the reasons that
7  I will now explain to you.  First, that you violated the
8  mandatory condition requiring that you pay an assessment fee and
9  restitution.  The petition alleges that as of the date of its
10 filing, which was May the 9th, you had not paid the assessment
11 fee nor made restitution since your supervision began on April
12 9, 2007.  Do you understand that allegation?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  Second, the petition alleges that you
15 violated the special condition that you participate in drug
16 testing, in that you failed to report for drug testing on April
17 16th, 2008, and May 7, 2008.  Do you understand that
18 allegation?
19         THE DEFENDANT:  Yes, I do.
20         THE COURT:  The petition also alleges that you violated
21 standard condition number two, which requires that you report to
22 your probation officer and submit a truthful and complete
23 written report within the first five days of each month, in that
24 you failed to report to your probation officer within the first
25 five days of May 2008 to submit your monthly report.  Do you

1  understand that allegation?

2           THE DEFENDANT:  Yes, I do.

3           THE COURT:  Finally, the petition alleges that you

4  violated standard condition three, which requires you to

5  truthfully answer all inquiries by the probation officer and

6  follow the instructions of your probation officer.  The petition

7  alleges that on May 7, 2008, the probation officer attempted to

8  collect a urine specimen from you, but you were unable to

9  produce that sample.  You were instructed by your probation

10 officer to report to the probation office on May 8th, but you

11 failed to report as instructed.  Do you understand that

12 allegation?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  Mr. Goldsmith, in addition to those

15 allegations, Judge Thompson has set a final hearing on the

16 revocation petition, and the hearing will also deal with the

17 question of whether you failed to comply with the inpatient

18 treatment requirements of the order which the Court entered on

19 October 24th, 2007.  Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  If the Court finds that you have violated

22 the conditions of supervised release, Mr. Goldsmith, the Court

23 can revoke your supervised release and order you to be

24 imprisoned for a term of imprisonment of not more than two

25 years.  Do you understand that?

```
 1           THE DEFENDANT:  Yes, I do.
 2           THE COURT:  All right.  With that, are we prepared to
 3  proceed with the preliminary hearing?
 4           MR. DEBARDELABEN:  We are, Your Honor.
 5           MR. PERRINE:  Yes, sir.
 6           THE COURT:  Call your first witness.
 7           MR. PERRINE:  United States calls probation officer Al
 8  Lancaster, Your Honor.
 9           (Witness sworn)
10      ALFRED LANCASTER, the witness, having been duly sworn,
11  testified as follows:
12                        DIRECT EXAMINATION
13  BY MR. PERRINE:
14  Q.  Good afternoon, sir.
15  A.  Good afternoon, Mr. Perrine.
16  Q.  Would you please state your name.
17  A.  Alfred Lancaster.
18  Q.  Mr. Lancaster, how are you employed?
19  A.  As a United States probation officer here in the middle
20  district.
21  Q.  And how long have you been in that capacity?
22  A.  Approximately 15 years.
23  Q.  As part of your job responsibilities, have you had the
24  occasion to be the probation officer for Mr. Willie Fred
25  Goldsmith?
```

```
 1  A.  Yes, sir, I have.
 2  Q.  And this is the defendant in the courtroom today?
 3  A.  Yes, sir, he is.
 4  Q.  All right.  Can you please tell the Court your most recent
 5  interaction with the defendant that led to you filing this
 6  petition for revocation I believe that you filed on May 9th,
 7  2008 in this court.
 8  A.  Yes, sir.  Last week, on May 7th, I attempted to collect a
 9  urine specimen from Mr. Goldsmith as he failed to appear for
10  drug testing.
11  Q.  Let me stop you right there.  What was his requirement to
12  appear for drug testing?
13  A.  That he would appear at least three times per month pursuant
14  to the color code -- code a phone.
15  Q.  Okay.  And so he was supposed to appear on what day?
16  A.  He was supposed to appear on May -- that day, actually, May
17  7th, 2008.
18  Q.  Okay.  And did Mr. Goldsmith show up?
19  A.  No, sir, he did not.
20  Q.  Has he showed up on a previous required date, on April 16th,
21  2008?
22  A.  No, sir, he did not.
23  Q.  All right.  So is that the basis for violation number two on
24  your petition for revocation?
25  A.  That's correct.
```

1  Q. All right. Let's go to your violation number one, failure
2  to make -- to pay the assessment fee or restitution payment.
3  A. Yes, sir, that's correct. Since Mr. Goldsmith's release on
4  April 9, 2007, he was instructed to pay his assessment fee in
5  full as well as submit $100 payments per month. He's done
6  neither.
7  Q. Okay. And that is the basis for violation number one?
8  A. Yes, sir, that's correct.
9  Q. All right. Let's move to violation number three in your
10 petition. What is violation number three, Mr. Lancaster?
11 A. Violation number three consists of him failing to report
12 within the first five days of the month. He was instructed to
13 report between the 1st and the 5th of May to submit his monthly
14 report. He failed to do so. I instructed him on May 7th to
15 report on May 8th to submit his monthly report. He failed to do
16 so.
17 Q. And how did you instruct him? Did you talk to him over the
18 phone?
19 A. I spoke to him physically. Went to his place of
20 residence/employment.
21 Q. Okay. Was it his residence or his employment?
22 A. Well, he works -- he's the maintenance man for the Days Inn
23 Motel at Gunter Air Force Base.
24 Q. Does he also live there?
25 A. Yes, sir, he does.

```
 1  Q.  Okay.  And so you went out to Gunter to speak to the
 2  defendant?
 3  A.  Yes, sir, I did.
 4  Q.  And did he give you a reason why he didn't show up as
 5  required?
 6  A.  No, sir.  I can't recall what excuse he gave.  He said he
 7  was coming in on May the 8th to report.  That's what he advised
 8  me.
 9  Q.  Okay.  Had you -- before you went out there, had you heard
10  from the defendant?
11  A.  No, sir, not in regards to a report.
12  Q.  Okay.  Do you know whether he knew he was supposed to report
13  within the first five days of May?
14  A.  Yes, sir, he did.
15  Q.  How did he know that?
16  A.  He's been on supervision previously, plus he was instructed
17  when he recommenced his supervised release.  He had a prior
18  supervision term that was revoked for committing a new criminal
19  offense, the case that we have before the Court now.
20  Q.  Is that the one where the revocation is set for July the
21  3rd, I believe?
22  A.  That's correct.
23  Q.  Revocation hearing?
24  A.  Yes, sir.
25  Q.  All right.  Did the defendant show up on May the 8th as he
```

```
 1  told you he would?
 2  A.  No, sir, he did not.  His monthly report actually was
 3  received today via the mail.
 4  Q.  Okay.  What does that mean, his monthly report was received
 5  via mail?
 6  A.  It's still in violation.  He's supposed to report between
 7  the 1st and the 5th, within the first five days of each month,
 8  so it's still late and of no consequence that he submitted it
 9  today -- I mean, it is of consequence that he submitted it
10  today.
11  Q.  So he sent it by mail rather than showing up in person?
12  A.  Exactly.  Yes, sir.
13  Q.  Well, have you seen -- have you been able to -- let's go to
14  condition number four, number four, violation number four on
15  your revocation petition.  What is the basis for violation
16  number four, Mr. Lancaster?
17  A.  Yes, sir.  The basis of violation number four is that on May
18  7th when I went to his residence to try to collect a urine
19  specimen, he was unable to provide me one.  Took me -- I waited
20  approximately an hour and a half, left after eight o'clock, and
21  instructed him to report to the probation office the next day to
22  submit a sample.  He never reported as I instructed him to do
23  so.
24  Q.  So May the 8th, he didn't show up.
25  A.  No, sir, he did not.
```

```
 1  Q.  And that's the basis for violation number four?
 2  A.  Yes, sir, that he failed to follow my instructions.
 3  Q.  All right.  Now, since you filed this petition for
 4  revocation on May the 9th and today's date, have you had the
 5  occasion to interact with the defendant?
 6  A.  Yes, sir.  He reported to the office yesterday to submit to
 7  drug testing, and the sample tested presumptive positive for
 8  cocaine.
 9  Q.  All right.  And what steps did you take, if you have taken
10  any, to verify that presumptive positive for cocaine?
11  A.  Since he denied using, it was forwarded to the lab for
12  confirmation.
13  Q.  If that does turn out to be positive cocaine, the lab
14  report, would that be another violation of his conditions of
15  supervised release?
16  A.  Yes, sir, it would, and the petition will be amended to
17  reflect that new violation.
18  Q.  How long does it typically take for you to get the results
19  of the lab report?
20  A.  Approximately one week.
21  Q.  Okay.  Now, how long, Mr. Lancaster, have you been the
22  supervising probation officer for Defendant Goldsmith?
23  A.  I believe I inherited his case around August of 2007.
24  Q.  How has the defendant performed on supervised release since
25  August 2007?
```

```
1  A.   Poorly.
2  Q.   Has he had a number of violations?
3  A.   Yes, sir, he has.
4  Q.   Has he been revoked during that period of time?
5  A.   No, sir, he has not.
6  Q.   Has he been subject to efforts by the probation office to
7  have him enrolled and comply with drug treatment?
8  A.   Yes, sir.
9  Q.   Would that include inpatient?
10 A.   Yes, sir.
11 Q.   Have you been involved in that?
12 A.   Yes, sir, I have.
13 Q.   What steps have you taken to try to get the defendant
14 enrolled in inpatient treatment?
15 A.   I referred him for inpatient treatment as well as outpatient
16 treatment through the Chemical Addictions Program.  He completed
17 the inpatient program as he was unsuccessful in the outpatient
18 program.  Upon his release from the inpatient program, he was
19 supposed to be transported to a long-term residential substance
20 abuse treatment program in Tallapoosa County.
21 Q.   And why was he going to be transported to this long-term
22 treatment program?
23 A.   To help him remain sober.
24 Q.   And who ordered that?
25 A.   Judge Thompson.
```

```
 1  Q.  All right.  Did you attempt to assist the defendant in
 2  getting into this long-term program?
 3  A.  Yes, sir.  I arranged it.
 4  Q.  And what happened?
 5  A.  Mr. Goldsmith balked at being transported to the facility.
 6  He came up with several issues, one of which was a hurt arm, and
 7  then finally that he didn't need the treatment.
 8  Q.  So did he ever go?
 9  A.  No, sir, he did not.
10  Q.  And is that the basis for the revocation petition with a
11  hearing that's set for July 3rd, 2008?
12  A.  Yes, sir, that's one of the bases.
13  Q.  Okay.  Any other violations since August 2007 for this
14  defendant?
15  A.  Nothing -- a long pattern of the violations already charged
16  in this petition have been ongoing:  Failure to pay restitution,
17  his assessment, failure to report for drug testing, failure to
18  abstain from illegal drug use, cocaine specifically.  And that's
19  pretty much the issues that's been since I've had his case.
20  Q.  All right.
21          PERRINE:  We have no further questions, Your Honor.
22          THE COURT:  Mr. Debardelaben?
23          MR. DEBARDELABEN:  Thank you, Your Honor.
24                        CROSS-EXAMINATION
25  BY MR. DEBARDELABEN:
```

```
 1  Q.  Good afternoon, Mr. Lancaster.
 2  A.  Yes, sir.  How you doing, Mr. Debardelaben?
 3  Q.  Mr. Lancaster, you and I have been working on this case for
 4  a little while, too, correct?
 5  A.  That's correct.
 6  Q.  And just going through your violations, just to clear up, on
 7  violation number one where you talk about they hadn't made any
 8  restitution payments, that violation is pending in front of
 9  Mr. -- Judge Thompson on -- for the July 3rd case, correct?
10  A.  Yes, sir, that's correct.
11  Q.  Okay.  So would it be fair to say that's not a decision for
12  Judge Coody to make today?  I mean, that issue is pending and
13  was subjected to the Court for Judge Thompson that he schedule a
14  hearing on?
15          MR. PERRINE:  Objection, Your Honor.  We just say the
16  Court is in the proper position to make that determination
17  rather than Mr. Lancaster -- I mean, the Court is the one to
18  make the decision whether it's for the Court to decide today or
19  for Judge Thompson.
20          THE COURT:  Gentlemen, it's my responsibility to
21  determine whether there's probable cause to believe that a
22  violation has been committed and the violation as set forth in
23  the petition.  The petition is what is pending.  So I've got to
24  make the determination about whether there's probable cause to
25  believe, not whether, in fact, the condition has been violated.
```

```
 1  Those are two separate inquiries.
 2  BY MR. DEBARDELABEN:
 3  Q.  In other words, this condition was set in your earlier
 4  petition to Judge Thompson?
 5  A.  That's correct.
 6  Q.  Okay.  Now, in condition number two, Mr. Lancaster, you talk
 7  about two different dates that Mr. Goldsmith failed to report.
 8  One of them was April 16th.  Did you actually go and see
 9  Mr. Goldsmith?
10  A.  On that particular date, I did not.
11  Q.  You did not give him a test on that date?
12  A.  No, sir.  He failed to show up at the office for drug
13  testing.
14  Q.  Okay.  So on April 16th, there was no test given, correct,
15  then?
16  A.  Every test that he's missed, I believe I may have followed
17  up and went to his residence to collect a sample, and it was
18  negative.  Every sample I went to collect from him at his
19  residence for missed tests within the last month was negative.
20  Q.  Okay.  Well, I guess -- help us all.  You didn't test him on
21  the 16th, yet he was supposed to show up?
22  A.  Yes, sir.
23  Q.  But you tested him within a day or two thereafter?  Would
24  that be your recollection?
25  A.  I -- yes, sir, I believe that's correct.  I can't remember
```

1  specifically if I went to his residence on April 16th, but I do
2  know when he missed, I tried to go get him.
3  Q.  Okay.
4  A.  As I did on the 7th.
5  Q.  And since getting out of his in-house treatment program, he
6  has tested negative except for what you're saying now is
7  presumptive positive on yesterday's test?
8  A.  That's -- I believe that's correct, yes, sir.
9  Q.  Okay.  And presumptive positive, these tests you give are
10 not 100 percent?
11 A.  No, sir, I can't say they're 100 percent.
12 Q.  Okay.  They have errors that happen in them?
13 A.  None that I've experienced, but I know it's possible.
14 Q.  Now, on condition number three, you talk about that he
15 didn't report within the first five days.  Is this a written
16 report that he is supposed to give to you?
17 A.  Yes, sir, it is.
18 Q.  And you have received a written report, but it came after
19 the first five days of the month?
20 A.  That's correct.  I received it today.
21 Q.  Did Mr. Goldsmith explain why that didn't come during the
22 first five days of the month?
23 A.  He submitted a two-page letter amongst his many letters, and
24 I can't believe specifically -- I can't remember specifically if
25 he addressed his reporting.  He addressed other issues in his

```
 1  letter, but I can't remember specifically if he addressed
 2  reporting.
 3  Q.  Okay.  But as far as condition number three, he now has
 4  given you the paperwork, even though it was late?
 5  A.  Yes, sir, he has given it to me.
 6  Q.  Okay.  And Mr. Lancaster, is it true that Mr. Goldsmith has
 7  maintained employment with the Holiday Inn here in Montgomery
 8  for some period of time now?
 9  A.  Yes, sir.  That's the Days Inn.
10  Q.  Excuse me.  Days Inn.
11  A.  Yes, sir.
12  Q.  Where is that located?
13  A.  Off of the Congress Dickinson Drive, the Gunter Air Force --
14  Gunter Air Force Days Inn.
15  Q.  Yes, sir.  And, now, you've talked to his employer?
16  A.  Yes, sir, I have.
17  Q.  And as a matter of fact, his employer has always -- except
18  for the day -- for the hearings that you've had, he's always
19  shown up with Mr. Goldsmith?
20  A.  Yes, sir, his manager.
21  Q.  And spoke very highly of his work ethic?
22  A.  Yes, sir, for the most part, my recollection.
23  Q.  I mean, he always stands ready to talk to the Court when he
24  was in there with us before?
25  A.  Yes, sir, I believe that's correct.
```

```
 1  Q.  Did Mr. Goldsmith tell you one reason he was unable to
 2  report is because he did not have any transportation?
 3  A.  He did contact me and state that he was waiting for Brian,
 4  the manager, the individual you're speaking of, to bring him to
 5  the office.  He contacted me that morning and advised of that.
 6  I didn't hear from him any more until yesterday he reported and
 7  we arrested him.
 8  Q.  And if he is allowed to stay out pending his hearing on July
 9  13th, is it your belief and understanding that he would be able
10  to maintain his job at Days Inn?
11  A.  Yes, sir.  I have no reason to question that.
12  Q.  Thank you, Mr. Lancaster.
13          THE COURT:  Anything else for the government?
14          MR. PERRINE:  Just briefly, Your Honor.
15                       REDIRECT EXAMINATION
16  BY MR. PERRINE:
17  Q.  Mr. Lancaster, do you have a recommendation for the Court of
18  whether the defendant should -- if he finds probable cause that
19  these violations have been committed, that -- whether he should
20  be detained or not?
21  A.  Yes, sir.  It's my recommendation that he be detained
22  because he's continued -- it appears to be he's continued drug
23  use, and the numerous hearings we've had with him in the past
24  regarding his blatant noncompliance with Court's orders.
25  Q.  Would it also be failure to follow your instructions to
```

```
 1  abstain from use of cocaine or a controlled substance and report
 2  as required?
 3  A.  Most definitely, yes, sir.
 4          MR. PERRINE:  No further questions, Your Honor.
 5          THE COURT:  Mr. Debardelaben, anything else from
 6  Mr. Lancaster?
 7          MR. DEBARDELABEN:  Not for Mr. Lancaster.
 8          THE COURT:  All right.
 9          MR. DEBARDELABEN:  If you'll give me one second, Your
10  Honor.  Oh, I guess it's still their case.  I'm sorry.
11          THE COURT:  Anything else from the government?
12          MR. PERRINE:  No, Your Honor.
13          THE COURT:  All right.  They've rested.
14          (Tape ended)
15      (Proceedings concluded at 3:22 p.m.)
16              * * * * * * * * * * * * * *
17              COURT REPORTER'S CERTIFICATE
18      I certify that the foregoing is a correct transcript
19  to the best of my ability from the official sound recording of
20  the proceedings in the above-entitled matter.
21          This 29th day of May, 2007.
22
23                      /s/ Patricia G. Starkie
                        Registered Diplomate Reporter
24                      Certified Realtime Reporter
                        Official Court Reporter
25
```